IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RICHARD A. TARVIN III, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE J.G. WENTWORTH COMPANY; 321 HENDERSON RECEIVABLES LIMITED PARTNERSHIP; 321 HENDERSON RECEIVABLES ORIGINATION, LLC; J.G. WENTWORTH STRUCTURED SETTLEMENT FUNDING CORPORATION; and J.G. WENTWORTH STRUCTURED SETTLEMENT FUNDING II, LLC,<br><br>Defendants. | Civil Action No. _____<br><br>**Class Action Complaint**<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Richard Tarvin III (hereinafter as "Plaintiff"), by and through his undersigned counsel, individually and on behalf of all others similarly situated, alleges as and for his Class Action Complaint against Defendants The J.G. Wentworth Company, its subsidiary 321 Henderson Receivables Limited Partnership, 321 Henderson Receivables Origination, LLC (successor entity to 321 Henderson Receivables Limited Partnership), J.G. Wentworth Structured Settlement Funding Corporation (general partner of 321 Henderson Receivables Limited Partnership), and J.G. Wentworth Structured Settlement Funding II, LLC (successor entity to J.G. Wentworth Structured Settlement Funding Corporation) (together, "Wentworth" or "Defendants"), upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by his attorneys, as follows:

## NATURE OF THE ACTION

1. This action seeks to redress Defendants' unfair, deceptive and fraudulent conduct that has caused Missouri consumers to not receive the necessary legal advice of disinterested counsel when evaluating offers to purchase structured settlement payments, and subsequently obtain less than the fair value of their settlement to the benefit of Wentworth.

2. The Missouri Structured Settlement Act, and similar laws passed by legislatures throughout the country, is meant to protect the beneficiaries of Structured Settlement Annuities ("SSA").

3. Beneficiaries of an SSA are persons who suffered physical injury, and often require expensive medical or other treatment or long-term care. Each beneficiary received the benefits of a SSA as a result of the resolution of a tort action and the resulting compensation was established to provide a steady income stream to assist the beneficiary through their lifetime.

4. Many beneficiaries suffered injuries that impair their ability to fully comprehend important life decisions and make informed choices.

5. In addition, many beneficiaries are unable to fully understand complex financial calculations, including formulas to account for the time-value of money, the calculation of present value of future income streams, and similar concepts involved in selling benefits from a SSA.

6. Indeed, SSAs are often used because the intended beneficiaries are often unsophisticated financially and unable to manage the large sums of money to which their injuries have entitled them to.

7. Because of these and other considerations, legislatures have passed statutes to protect beneficiaries from not receiving fair value for their SSA benefits if such beneficiaries choose to sell their right to future payments in exchange for a lump sum cash buyout.

8. Such statutes often require that the beneficiary of a SSA receive the independent legal advice of counsel to inform the beneficiary of the risks involved in the sale of future payments for a lump sum amount and to opine whether such a transaction is in the beneficiary's best interests.

9. Despite these efforts, Defendants have created a cottage industry that profits off the beneficiaries of SSAs solely for the financial gain of their shareholders. In fact, Wentworth is one of the preeminent names in this industry that engages in such predatory practice.

10. Defendants have taken advantage of these beneficiaries in obtaining rights to SSA benefits at prices well-below the fair market value of that future income stream. In particular, Defendants often recommend beneficiaries hire an attorney from a pre-created list of referrals that Defendants' maintain. Such attorneys are not disinterested as required by statute and do not provide any independent and competent legal advice on whether the beneficiary should accept the deal.

**PARTIES**

11. Plaintiff Richard Tarvin III is a natural person and was a citizen of Missouri during the period in which the events giving rise to this cause of action occurred. Mr. Tarvin currently resides in Australia.

12. Defendant The J.G. Wentworth Company ("J.G. Wentworth") is a Delaware corporation with its principal executive offices located at 1200 Morris Drive, Suite 300; Chesterbrook, PA 19087.

13. Defendant 321 Henderson Receivables Limited Partnership ("321 Henderson LP") is a Nevada entity with a statutorily required address at 40 Morris Ave, Bryn Mawr, PA 19010 and a corporate address at 2215-B Renaissance Drive, Suite 5, Las Vegas, NV 89119.

14. Defendant 321 Henderson Receivables Origination, LLC ("321 Henderson LLC") is the successor entity of 321 Henderson Receivables Limited Partnership as a result of a corporate conversion transaction in Nevada and is a Nevada limited liability company.

15. Defendant J.G. Wentworth Structured Settlement Funding Corporation ("Structured Settlement Corp") is a Nevada corporation with its principal place of business at 30 South 15th St., Philadelphia, PA 19102.  J.G. Wentworth Structured Settlement Funding Corporation was the general partner of 321 Henderson Receivables Limited Partnership with a listed address of 639 Isbell Rd. #390, Reno, NV 89509.

16. Defendant J.G. Wentworth Structured Settlement Funding II, LLC ("Structured Settlement LLC") is the successor entity of J.G. Wentworth Structured Settlement Funding Corporation as a result of a corporate conversion transaction in Nevada and is a Nevada limited liability company.  The managers of J.G. Wentworth Structured Settlement Funding II, LLC are Bernard J. Angelo, Kevin P. Burns, and Randi Sellari, all with a listed address of 3993 Howard Hughes Pkwy., Suite 250; Las Vegas, NV 89169.

## **FACTS**

17. Mr. Tarvin is the beneficiary of a structured settlement, secured by an annuity, as a result of a claim regarding brain injuries he suffered as a minor.

18. The structured settlement was issued by General Electric Capital Assurance Company in Lynchburg, VA, with the obligor, which issued the annuity, being Reliance Insurance Company in Liquidation in Philadelphia, PA.

19. On or about March 2015, Mr. Tarvin contacted J.G. Wentworth regarding the possibility of selling a portion of his future interest in the annuity. Michael Schwartz was the Account Executive overseeing this transaction.

20. Mr. Schwartz represented that he worked for J.G. Wentworth and had a Wentworth email address.

21. J.G. Wentworth referred Mr. Tarvin to Anthony D. Gray of Gray Graham LLP a/k/a ADG & Associates, an attorney who Wentworth misrepresented to be disinterested counsel.

22. On information and belief, Mr. Gray had an ongoing business relationship with Wentworth and was not disinterested counsel. In fact, Mr. Gray was on a list of attorneys used by Wentworth to refer consumers who were seeking the statutorily required legal advice of independent, disinterested counsel.

23. Mr. Gray did not opine that the transaction with Wentworth was in the best interest of Mr. Tarvin, nor did he disclose to Mr. Tarvin that, in fact, he was not disinterested counsel.

24. On or about May 5, 2005, Mr. Tarvin entered into an agreement with 321 Henderson LP, a subsidiary of J.G Wentworth, to sell a portion of the future pecuniary interest of the annuity.

25. As with the selection of Attorney Gray, J.G. Wentworth chose to have its affiliated entity enter into this agreement with Mr. Tarvin even though he had been dealing with J.G. Wentworth directly. Other than the name on the agreement, Mr. Tarvin and Attorney Gray dealt with J.G. Wentworth.

26. Per the agreement, J.G. Wentworth was to pay $300,000.00 to Mr. Tarvin in exchange for a scheduled portion of his annuity payments totaling $570.575.75, beginning on July 6, 2005 and ending on June 6, 2015.

27. The present value of Mr. Tarvin's annuity was $449,222.62 at the time of the transaction in 2005.

28. The terms of the agreement were fundamentally unfair. Specifically, the value paid to Mr. Tarvin was unconscionably low, was not in his best interest, and no truly disinterested counsel would have advised Mr. Tarvin to accept it.

29. RSMo § 407.1062(6) requires that "the payee has been represented by disinterested counsel in connection with the transfer or the payee understands the nature of the transaction and the economic consequences of the action."

30. Mr. Tarvin was not represented by disinterested counsel nor did he fully understand the nature of the transaction and its economic consequences.

31. Mr. Gray did not submit any filings to the Court nor did Mr. Gray attend the hearing where the transfer was approved.

32. Defendants were the ones to draft the filing, make the (mis)representations about the status of Mr. Gray as a disinterested counsel to the court and that the transaction was in the best interests of Plaintiff, and ultimately obtain approval of the deal.

33. As a result, the transaction between Mr. Tarvin and Wentworth should have never been approved, and would not have been approved if full disclosure of the true nature and circumstances of the transaction were made.

## JURISDICTION AND VENUE

34. This Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. § 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and is a class action in which members of the putative plaintiff class are citizens of States different from Defendant.

35. This Court has general personal jurisdiction over Defendants. Defendants do business in Missouri through continuous, permanent, and substantial activity in the state.

36. This Court has specific personal jurisdiction over Defendants because they maintain sufficient contacts in this jurisdiction, including the advertising, marketing, and sale of financial services within the state.

37. Venue is proper pursuant to 15 U.S.C. § 80b-14 and 28 U.S.C. § 1391. Defendants regularly transact and solicit business in this District.

## CLASS ALLEGATIONS

38. Plaintiff brings this action pursuant to Missouri law on behalf of himself and all other similarly situated Wentworth customers in the State of Missouri who did not receive the advice of disinterested counsel as defined by the Structured Settlement Act within the applicable statutes of limitations preceding the filing of this action through and including the date of judgment.

39. Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend the foregoing class definition by amendment or motion.

40. Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendant; any entity in which any Defendants has or had a controlling interest, or which

Defendants otherwise control or controlled; and any officer, director, legal representative, predecessor, successor, or assignee of a Defendant.

41. This action is properly maintainable as a class action. The proposed Class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable. There are questions of law or fact common to all Class Members that predominate over any questions affecting only individual members. Specifically, the common questions of fact and law include:

   a. Whether Defendants submitted false and misleading information to the courts that approved the sale of the beneficiary's interest in a SSA;

   b. Whether Plaintiff and the Proposed Class received the legal advice of disinterested counsel;

   c. Whether the attorneys recommended by Defendants were, in fact, disinterested; and

   d. Whether Defendants engaged in unfair, deceptive or fraudulent acts.

42. The proposed lead Plaintiff's claims are typical of those of the Proposed Class because the proposed lead Plaintiff's claims are based upon the same facts and circumstances (practice or course of conduct) that gives rise to the claims of the other class members and based upon the same predominate legal theories.

43. Plaintiff can adequately and fairly represent the class. No conflict of interest exists between the representative Plaintiff and the Proposed Class because Defendants' conduct was uniform and affected them similarly.

44. Plaintiff and his chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution. In addition, the Plaintiff's attorneys are competent in the areas of law

relevant to this Complaint and have sufficient experience and resources to vigorously represent the Plaintiff and the Proposed Class and prosecute this action.

45. A class action is superior to any other available method for adjudicating this controversy. The proposed class is (i) the surest way to fairly and expeditiously compensate so large a number of injured persons that constitute the Class, (ii) to keep the courts from being inundated by hundreds or thousands of repetitive cases, and (iii) to reduce transactions costs so that the injured class members can obtain the most compensation possible. Accordingly, class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious wasteful litigation relevant to this action.

## CLAIMS FOR RELIEF

### COUNT I
**(Violation of Missouri Structured Settlement Act)**

46. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein, and further alleges:

47. Mr. Tarvin was not represented by disinterested counsel as defined by RSMo § 407.1060(4) because Mr. Gray had a business relationship with J.G. Wentworth, a transferee of the structured settlement payment rights. The Proposed Class also was not represented by disinterested counsel as the attorneys on Defendants' referral list had a business relationship with Wentworth.

48. Mr. Tarvin's counsel, Mr. Gray, did not opine that the transfer was in the best interests of Mr. Tarvin. The Proposed Class' counsel also did not opine that the transfer was in each class member's best interests.

49. Mr. Tarvin and members of the Proposed Class could not fully appreciate the nature of the transaction on his/her own and each was relying on the advice of what he/she thought was disinterested counsel that the transaction was in his/her best interest.

50. The transfer was, in fact, not in the best interests of Mr. Tarvin and the Proposed Class as required by § 407.1062(2).

51. Defendants obtained approval of the transfer of SSA benefits by submitting false or misleading information to the courts, in the form of letters from purported disinterested counsel, that Defendants represented demonstrated the necessary independent legal advice provided and the legal conclusion of disinterested counsel that the deal was in the best interests of the beneficiary/transferor.

52. Plaintiff and the Proposed Class were damaged by Defendants' conduct because they received lump sum payments well below the current fair market value of the benefits transferred.

## COUNT II
### (Violation of Missouri Merchandising Practices Act, "MMPA")

53. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein, and further alleges:

54. RSMo § 407.020 provides that the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce [], in or from the state of Missouri, is declared to be an unlawful practice."  The MMPA also covers "services" as well as merchandise.

55. RSMo § 407.025 provides a private cause of action, the possibility to recover punitive damage and attorney's fees, and for the maintenance of a class action.

56. Defendants solicited consumers, including Plaintiff and the Proposed Class, to sell their right to future annuity payments for a lump sum cash payment.

57. Plaintiff and the Proposed Class sought to obtain a lump sum payment from Wentworth. Wentworth ultimately recommended attorneys from their referral list, including Mr. Gray, to represent Plaintiff and the Proposed Class.

58. J.G. Wentworth chose to have one of its numerous subsidiaries, like 321 Henderson Receivables Limited Partnership, to consummate the transaction.

59. Plaintiff and the Proposed Class sold their right to certain future annuity payments in exchange for a lump sum.

60. Plaintiff and the Class went through with the sale of the future annuity payments for personal, family or household purposes.

61. Defendants represented that Mr. Gray and other attorneys on the referral list were disinterested counsel.

62. Defendants failed to disclose that they had an ongoing business relationship with Mr. Gray and the other attorneys on the preferred referral list.

63. Defendants knew, or should have known, that Plaintiff and Class Members like him have a decreased ability to understand the terms of completed financial transactions such as the one entered into between Plaintiff and Defendants for the purchase of future annuity payments.

64. Defendants represented that the transaction was in the best interests of Plaintiff and the Proposed Class.

65. As a result, Plaintiff and the Proposed Class suffered ascertainable loss of money in the form of the present value of the annuity payments sold minus the amount actually paid by

Defendants. In particular, Plaintiff only received $300,000 for the present value of future annuity payments worth $449,222.62.

66. Defendants' conduct in (1) recommending attorney Mr. Gray, and other attorneys on their referral list, (2) representing that such attorneys were disinterested counsel, and (3) representing that such attorneys provided legal advice and thereby advised their clients that the transaction was in their best interests when such deals were not, demonstrates a complete indifference to or conscious disregard of the rights of Plaintiff and the Class.

## COUNT III
**(Fraudulent Misrepresentation)**

67. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein, and further alleges:

68. Wentworth falsely and materially represented Mr. Gray and the other attorneys on the referral list as a disinterested counsel as defined by RSMo § 407.1060, which was false.

69. Wentworth falsely and materially represented that approval of the transfer was in the best interest of Plaintiff and the Proposed Class.

70. Wentworth also falsely and materially represented that the lump sum payment was equal to the fair market value of the structured settlement rights being transferred.

71. Wentworth knew of the falsity of its representations, and intended Mr. Tarvin and the Proposed Class and the courts to rely upon the misrepresentations.

72. Mr. Tarvin and the Proposed Class did not, and could not, have known of the business relationship between Gray and Wentworth, and relied upon Wentworth's representation.

73. Mr. Tarvin and the Proposed Class could not independently determine whether the transaction was in their best interest or if they was actually receiving fair market value.

74. Mr. Tarvin and the Proposed Class reasonably relied on Wentworth's misrepresentations or omissions.

75. Mr. Tarvin and the Proposed Class was injured by the misrepresentation because they did not receive the advice of disinterested counsel and received less than fair value for their structured settlement payments.

## **PRAYER FOR RELIEF**

For all the foregoing reasons, Plaintiff respectfully requests that the Court:

(a) Issue an order certifying the Class defined above, appointing the Plaintiff as Class representative, and designating her Attorneys as Class Counsel;

(b) Find that Wentworth has committed the violations of law alleged herein;

(c) Enter an order granting monetary relief and damages on behalf of the Class;

(d) Enter an order granting all appropriate relief on behalf of the Class under the applicable state laws;

(e) Render an award of statutory and compensatory damages, the amount of which is to be determined at trial;

(f) Render an award of punitive damages;

(g) Enter judgment including interest, costs, expenses and reasonable attorneys' fees; and

(h) Grant all such other relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Date: October 22, 2019                     Respectfully submitted,

RICHARD TARVIN
Class Plaintiff,

**THE LAW FIRM OF
THOMAS SANFILIPPO & ASSOCIATES, LLC**

 */s/ Thomas J. SanFilippo* #MO63212
Thomas J. SanFilippo – Principal Attorney
211 N. Broadway, Suite 2323
St. Louis, Missouri 63102
PH:     (314) 669-5752
FX:     (314) 396-6655
EM:     thomas@tsalawoffice.com

**QUANTUM LEGAL LLC**

 */s/ Richard J. Burke* #MO29230___
Richard J. Burke
Jamie E. Weiss #IL6230182
Zachary A. Jacobs #IL6294345
513 Central Avenue
Suite 300
Highland Park, IL 60035
Tel: (847) 433-4500
rich@qulegal.com
jamie@qulegal.com
zachary@qulegal.com

**Attorneys for Plaintiff and
the Class**