**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| RICHARD A. TARVIN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff(s),<br><br>vs.<br><br>THE J.G. WENTWORTH COMPANY, et al.,<br><br>    Defendant(s). | )<br>)<br>)<br>)<br>)<br>)  Case No. 4:19-cv-02860-SRC<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>Memorandum and Order</u>**

When he was a minor, Plaintiff Richard Tarvin with the assistance of counsel settled a personal injury lawsuit under a settlement that paid him not in a lump sum but over a number of years. Fifteen years ago, Tarvin sold Defendants his rights to receive future settlement payments in exchange for an immediate lump sum payment. Before Tarvin and Defendants finalized the sale, a Missouri state court reviewed the terms of the transaction and approved it, finding that the sale was in Tarvin's best interest, was for fair market value, that he was represented by disinterested counsel, and that he understood the nature and economic consequences of the transaction. Doc. 11-3. Tarvin now seeks to have this Court overturn the state court's findings and void not only his sale but also those of a class of others. Because federal law prohibits this Court from reviewing and overturning state-court judgments, and because Tarvin otherwise fails to state a claim, the Court grants [10] the Motion to Dismiss Plaintiff's Class Action Complaint of Defendants.

**I.     BACKGROUND**

Some years ago, Tarvin settled a personal injury case under a so-called structured settlement, i.e., an annuity that paid him monthly payments for a period of many years. Tarvin had both a conservator and an attorney represent him in that settlement, and a state court approved it. *See Tarvin v. Archdiocese of St. Louis,* Cause No. 862-01489 (Circuit Court of St. Louis City, Missouri) (Order dated January 11, 1989)*; see also* Mo. Sup. Ct. R. 52.02 (providing that civil action on behalf of a minor may only be commenced by a duly-appointed guardian or guardian *ad litem*); Mo. Rev. Stat. § 507.184 (providing "[t]he court shall have the power and authority to hear evidence on and either approve or disapprove a proposed contract to settle an action or claim of a minor[.]"). These are matters of public record which the Court may properly consider in this motion to dismiss. *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

Later, Tarvin apparently wanted or needed the money in a lump sum. In 2005, Tarvin decided to sell his remaining annuity payments to one or more of the Defendants. As required by the Missouri Structured Settlement Act, Mo. Rev. Stat. § 407.1060, et seq., Tarvin had a lawyer represent him, and a Missouri state court reviewed the terms of the transaction and approved it. As noted, the state court made express findings that the sale was in Tarvin's best interest, was for fair market value, that he was represented by disinterested counsel, and that he understood the nature and economic consequences of the transaction. Doc. 11-3.

Tarvin now alleges that he was not, in fact, represented by disinterested counsel because his attorney had been referred to him by Defendants and had a business relationship with the Defendants. Tarvin further alleges that he did not understand the economic consequences of the transaction, and that the sale was for less than fair market value and not in his best interest.

Based on these allegations, Tarvin brings state law claims for violation of the Missouri Structured Settlement Act, (Count I), violation of the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. § 407.010, et seq. (Count II), and fraudulent misrepresentation (Count III). Tarvin asserts these claims on behalf of himself and a proposed class consisting of all Defendants' Missouri customers "who did not receive the advice of disinterested counsel as defined by the [Missouri] Structured Settlement Act". Doc. 1 at ¶ 38.

Defendants move to dismiss Tarvin's complaint on multiple grounds. Defendants move to dismiss the entirety of Tarvin's complaint under Rule 12(b)(1), arguing that this Court lacks subject matter jurisdiction to overturn the state court's express findings under the *Rooker-Feldman* doctrine. Defendants also move under Rule 12(b)(6) to dismiss all claims as untimely, and move to dismiss Counts I and II because, respectively, the Missouri Structured Settlement Act creates no private cause of action (Count I), and Tarvin was the "seller" in their transaction as defined in the Missouri Merchandising Practices Act (Count II). Finally, Defendants move to dismiss all of Tarvin's claims for failing to meet Rule 9(b)'s heightened pleading requirements for claims of fraud.

Because Defendants' 12(b)(1) motion goes to the Court's jurisdiction, the Court addresses this argument first.

**II.     STANDARD**

The purpose of a Rule 12(b)(1) motion is to allow the court to address the threshold question of jurisdiction, as "judicial economy demands that the issue be decided at the outset rather than deferring it until trial." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). When deciding a motion under Rule 12(b)(1), a court must decide if a defendant makes a facial or factual attack on jurisdiction. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016).

3

"In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (internal quotations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* To survive a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction has the burden of establishing that subject matter jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

A factual attack does not convert a motion under Rule 12(b)(1) into a motion for summary judgment. *Osborn*, 918 F.2d at 729. When considering a factual attack, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "[A] court can evaluate its jurisdiction without an evidentiary hearing, so long as the court has afforded the parties notice and a fair opportunity to be heard." *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008) (finding parties "had ample opportunity to be heard through affidavits and briefs").

Defendants' 12(b)(1) motion to dismiss under the *Rooker-Feldman* doctrine relies on materials outside the pleadings, so the Court construes it as a factual attack on the Court's jurisdiction. *Carlsen*, 833 F.3d at 908. Specifically, Defendants append to their Motion the sales agreement whereby Tarvin transferred to Defendants his future interest in the annuity and the state court judgment approving that transfer. Docs. 11-2, 11-3. Likewise, Tarvin attaches to his brief affidavits from himself and the attorney who represented him in the transfer. Docs. 24-1, 24-2.

4

## III. DISCUSSION

The *Rooker-Feldman* doctrine receives its name from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Feldman*, the Supreme Court held that district courts "do not have jurisdiction[ ] ... over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." 460 U.S. at 486. "The basic theory of the *Rooker–Feldman* doctrine is that only the United States Supreme Court has been given jurisdiction to review a state-court decision, so federal district courts generally lack subject-matter jurisdiction over attempted appeals from a state-court judgment." *Robins v. Ritchie*, 631 F.3d 919, 925 (8th Cir. 2011) (quoting *Dodson v. Univ. of Ark. for Med. Scis.*, 601 F.3d 750, 754 (8th Cir. 2010)).

The Supreme Court clarified the scope of the *Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) confining the doctrine to cases that: (1) are brought by parties who lost in state court; (2) complain of injuries caused by the state court judgment; (3) are filed after the state court rendered the judgment; and (4) invite a district court to review and reject the state court judgment. 544 U.S. at 284; *see also Robins*, 631 F.3d at 925.

Defendants argue that Tarvin's complaint meets the requirements for dismissal under *Rooker-Feldman*. Doc. 11 at 6. The Court agrees.

### A.     Tarvin lost in state court

Defendants argue that Tarvin lost in state court because he alleges that he was harmed by the transfer of the annuity, which the state court reviewed and approved. Tarvin does not expressly dispute Defendants' argument that he lost in state court. In arguing that Tarvin was a

5

state court loser, Defendants rely principally on *Hartford Life Ins. Co. v. Solomon*, 910 F. Supp. 2d 1075, 1081 (N.D. Ill. 2012).

*Hartford Life* involved similar facts to the present case. There, as here, a structured settlement beneficiary sold his annuity for a lump sum, with the state court approving the transfer. 910 F. Supp. 2d at 1077. After the beneficiary died, his estate sued to recover the annuity assets because the transfer was allegedly tainted by misrepresentations. *Id.* at 1078. The district court found that it lacked subject matter jurisdiction under *Rooker-Feldman*. *Id.* at 1082. The district court acknowledged that the beneficiary "did not lose in the conventional sense" because he and the transferee jointly petitioned the state court to approve the transfer, and that petition was granted. *Id.* at 1081. However, the court determined that the beneficiary could not simultaneously "sue in federal court to overturn the order approving the transfer" while avoiding *Rooker-Feldman* by claiming that he was not a "state-court loser." *Id.*

This Court finds the reasoning of *Hartford Life* persuasive. Here, Tarvin alleges that the transfer of his annuity "should have never been approved" because the "terms of the agreement were fundamentally unfair" and "the value paid to Mr. Tarvin was unconscionably low." Doc. 1. at ¶ 28, 33. Yet the state court reviewed and approved the terms of the transfer. *See* Doc. 11-3. Tarvin cannot simultaneously claim that he did not "lose" in state court while alleging injuries directly traceable to the state court's approval of the transfer. The Court finds the first element of *Rooker-Feldman* element satisfied.

### B. Tarvin complains of injuries caused by the state-court judgment

The second *Rooker-Feldman* element requires that Tarvin complain of injuries caused by the state-court judgment. *Robins*, 631 F.3d at 925. Defendants argue that Tarvin complains of

6

injuries caused by the state court judgment because "[w]ithout the state court approval … Plaintiff could not have been injured." Doc. 11 at 7. The Court agrees.

In each count of Tarvin's complaint, he alleges injuries directly traceable to the state court's approval and order of the transfer. In his claim for violation of the Missouri Structured Settlement Act (Count I), Tarvin alleges that he (and the proposed class) were injured because "they received lump sum payments well below the current fair market value of the benefits transferred." Doc. 1 at ¶ 52. In his claim for violation of the Missouri Merchandising Practices Act (Count II), Tarvin alleges that he "suffered ascertainable loss of money" in that he "only received $300,000 for the present value of future annuity payments worth $449,222.62." *Id.* at ¶ 65. And in his claim for fraudulent misrepresentation (Count III), Tarvin alleges that he (and the proposed class) were injured because they "received less than fair value for their structured settlement payments." *Id.* at ¶ 75.

Under Missouri law, "[n]o transfer of structured settlement payment rights [is] effective … unless the transfer has been approved in advance in an order of a court of competent jurisdiction". Mo. Rev. Stat. § 407.1062. Further, such approval is contingent upon the state court's "express finding" that "[t]he payment to be made to the payee by the transferee is equal to the fair market value of the structured settlement rights being transferred." *Id.* Thus, Tarvin complains of economic injuries that were caused by the state court judgment. *See Hartford Life*, 910 F. Supp. 2d at 1079 ("The Estate's claims do not appear to allege an injury 'independent' of the judgment: Solomon could not have transferred the payment without the state court's approval."). The Court finds that the second element of *Rooker-Feldman* is satisfied.

7

### C. Timing of the state court judgment

The third element necessary for *Rooker-Feldman* dismissal is that the state-court judgment at issue must have been rendered before the federal suit was filed. *Robins*, 631 F.3d at 925. Here, the state court judgment approving the transfer of Tarvin's annuity was entered on May 5, 2005. Doc. 11-3 ("Judgment Approving and Ordering Transfer of Structured Settlement Payments"). The present case was filed on October 22, 2019. The third *Rooker-Feldman* element is satisfied.

### D. Tarvin asks this Court to review and reject the state court's judgment

The final *Rooker-Feldman* element requires that Tarvin seek district court review and rejection of a state-court judgment. *Robins*, 631 F.3d at 925. Before *Exxon-Mobil Corp.*, the Eighth Circuit routinely found this element satisfied where state and federal claims were "inextricably intertwined." *See, e.g., Ace Const. v. City of St. Louis,* 263 F.3d 831, 833 (8th Cir. 2001) (plaintiff's due process challenge to a city ordinance was barred because it was "inextricably intertwined" with a state-court ruling that plaintiff lacked standing to challenge the ordinance); *Lemonds v. St. Louis County,* 222 F.3d 488, 492–93, 495 (8th Cir. 2000) (plaintiff's federal claims were inextricably intertwined with state court judgment so *Rooker-Feldman* applied); *Prince v. Ark. Bd. Exam'rs in Psychol.,* 380 F.3d 337, 340 (8th Cir. 2004) (same). However, Eighth Circuit cases after *Exxon-Mobil Corp.* reveal an apparent split of authority as to "whether the 'inextricably intertwined' language [continues to have] any independent significance." *Dodson*, 601 F.3d 750, 758 (8th Cir. 2010) (Melloy, J., concurring). *Compare Robins*, 631 F.3d 919, 925 (finding federal claims "inextricably intertwined" with state court judgments and applying *Rooker-Feldman*), *with Edwards v. City of Jonesboro*, 645 F.3d 1014

8

(8th Cir. 2011) (not addressing "inextricably intertwined" test and holding *Rooker-Feldman* inapplicable).

Regardless of whether the "inextricably intertwined" test has any independent significance, the Court finds the fourth element of *Rooker-Feldman* satisfied here because Tarvin asks the Court to reject express findings of the state court judgment. Tarvin alleges that the state court approved the annuity transfer because of three material misrepresentations by Defendants: (1) that Tarvin's attorney—referred by Defendants—was disinterested counsel; (2) that the transfer was in Tarvin's best interest; and (3) that the lump sum payment was equal to the fair market value of the structured settlement rights being transferred. Doc. 1 at ¶¶ 68-70. Tarvin also alleges that he did not "fully understand the nature of the transaction and its economic consequences." *Id.* at ¶ 30.

Each of Tarvin's claims directly links his alleged injuries to these alleged misrepresentations to the state court. *See id.* at ¶ 51 (Count I) ("Defendants obtained approval of the transfer … by submitting false or misleading information to the courts"); *id.* at ¶¶ 64-65 (Count II) ("Defendants represented that the transaction was in the best interests of Plaintiff…. As a result, Plaintiff and the Proposed Class suffered ascertainable loss"); *id.* at ¶ 75 (Count II) ("Mr. Tarvin and the Proposed Class was [sic] injured by the misrepresentation because they … received less than fair value for their structured settlement payments.")

In her judgment approving the transfer, the state court judge made express findings of fact, as required by statute. Mo. Rev. Stat. § 407.1062. As relevant here, the judge found that the transfer was "in the best interest of the payee, taking into account the welfare and support of the payee's dependents." Doc. 11-3 at 2. The judge further found that:

> 6. The payee has been represented by disinterested counsel in connection with this transfer, namely, Anthony Gray.

9

> 7. The payment to be made to the payee by the transferee is equal to the fair market value of the structured settlement rights being transferred and the payee understands the nature of the transaction and the economic consequences of the transaction.

*Id.* at 3. Thus, Tarvin's federal court claims can only succeed to the extent this Court rejects the express findings of the state court. Accordingly, Tarvin seeks review and rejection of the state court judgment.

Tarvin argues that he does not seek to overturn the state court judgment because he asserts "independent" claims for violation of the Missouri Merchandising Practices Act and fraudulent misrepresentation "that were in no way part of the state court proceedings approving the transfer." Doc. 24 at 3. As noted above, Tarvin predicates each of his claims on alleged misrepresentations that are contrary to the state court's express findings. Yet Tarvin insists that his claims "are based on injuries from the fraudulent actions of Defendants, not the state court judgment itself." *Id.* Essentially, Tarvin asks this court to recognize a fraud exception to *Rooker-Feldman*. But the Eighth Circuit has declined to recognize any such exception. *See Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1035–36 (8th Cir. 1999); *Liedtke v. Runningen*, No. CV 15-3361 (JRT/HB), 2016 WL 5660455, at *4 (D. Minn. Sept. 29, 2016), *aff'd*, 697 F. App'x 468 (8th Cir. 2017) ("the Eighth Circuit has not recognized a fraud exception to the *Rooker-Feldman* doctrine").

Tarvin's arguments mirror those made by the Estate in *Hartford Life*. There, the Estate argued that the transferees "misled the state court" by failing to inform the court that the settlement payment was non-transferrable. 910 F. Supp. 2d at 1079. The court found that the transferees' alleged misrepresentations to the state court did not support a claim independent of the state court's judgment. *Id.*; *see also Sanders v. JGWPT Holdings, Inc.*, 82 F. Supp. 3d 767, 774 (N.D. Ill. 2015) (allegation that defendants made false statements to plaintiffs and state

10

courts to obtain state court approval of structured settlement transfers did not save putative class action from *Rooker-Feldman* remand).  The Court likewise finds that Tarvin fails to assert any claim independent of the state court judgment.  The fourth and final element of *Rooker-Feldman* is satisfied.

The Court concludes, pursuant to the *Rooker-Feldman* doctrine, that it lacks subject matter jurisdiction over this matter and thus grants Defendants' motion to dismiss pursuant to Rule 12(b)(1).

## IV.   RULE 12(b)(6) MOTION

Even if the Court did have subject matter jurisdiction, it would dismiss Tarvin's claims under Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief."

To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).  Ordinarily, only the facts alleged in the complaint are considered for purposes of a

motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

### A. Count I - Missouri Structured Settlement Act

Defendants move to dismiss Count I of Tarvin's Complaint under Rule 12(b)(6) because the Missouri Structured Settlement Act does not create a private cause of action. The Court agrees. Tarvin admits that the Act does not create an express private right of action but asks the Court to find an implied right of action. Under Missouri law, implied rights of action "are not favored" and are reserved for only "the narrowest of circumstances." *Neighbors Against Large Swine Operations v. Cont'l Grain Co.*, 901 S.W.2d 127, 129 (Mo. Ct. App. 1995). Tarvin points to no case or other authority recognizing an implied right of action under the Missouri Structured Settlement Act. In fact, Defendants argue—and Tarvin does not dispute—that *no state* has ever recognized a private right of action under a structured settlement law. The Court declines to find such a private right of action under the Act. Count I fails to state a claim.

### B. Count II – Missouri Merchandising Practices Act

Defendants also move to dismiss Tarvin's claim under the MMPA. Defendants argue that Tarvin is ineligible to bring a claim under the MMPA because, on the facts alleged here, Tarvin is a "seller" rather than a "buyer of merchandise." The elements of a MMPA claim are: "(1) the plaintiff bought merchandise from the defendant; (2) the merchandise was bought for personal, family, or household purposes; (3) the plaintiff suffered an ascertainable loss of money or property; and (4) the loss was a result of an act declared unlawful in [the MMPA]." *Wright v. Bath & Body Works Direct, Inc.*, No. 12-00099-CV-W-DW, 2012 WL 12088132, at *1 (W.D. Mo. Oct. 17, 2012) (citing *Chochorowski v. Home Depot U.S.A., Inc.*, 295 S.W.3d 194, 198 (Mo. App. E.D. 2009). The MMPA creates an express private right of action, but only for the buyer. Section 407.025(1) of the MMPA provides: "Any person *who purchases or leases merchandise*…may bring a private civil action". Mo. Rev. Stat. § 407.025(1) (emphasis added).

According to his own allegations, Tarvin was not the buyer in his transaction with Defendants, but the seller. Tarvin alleges that he "and the Proposed class *sold their right to certain annuity payments in exchange for a lump sum*." Doc. 1 at ¶ 59 (emphasis added); *see also id.* at ¶ 65 ("Plaintiff and the Proposed class suffered ascertainable loss in the form of the present value of the annuity payments sold minus the amount actually paid by Defendants."). Accordingly, Tarvin does not qualify for the MMPA's express right of action. The Court declines to recognize an implied right of action for sellers. Count II fails to state a claim.

### C. Counts I-III – Rule 9(b)

Finally, Defendants move to dismiss all of Tarvin's claims for failure to meet Federal Rule of Civil Procedure 9(b)'s requirement that fraud must be alleged with particularity. In relevant part, Rule 9(b) provides: "In alleging fraud or mistake, a party must state with

13

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  As noted above, Tarvin bases each of his claims on alleged misrepresentations by Defendants.  Doc. 1 at ¶ 51 (Count I) ("Defendants obtained approval of the transfer … by submitting false or misleading information to the courts"); *id.* at ¶¶ 64-65 (Count II) ("Defendants represented that the transaction was in the best interests of Plaintiff…. As a result, Plaintiff and the Proposed Class suffered ascertainable loss"); *id.* at ¶ 75 (Count II) ("Mr. Tarvin and the Proposed Class was [sic] injured by the misrepresentation because they … received less than fair value for their structured settlement payments.").  A claim premised on misrepresentation falls within Rule 9(b)'s requirements regardless of whether it is explicitly labeled a "fraud" claim.  *See, e.g., Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013) (fraudulent misrepresentation claim subject to Rule 9(b)'s heightened pleading requirements); *Vitello v. Natrol, LLC*, No. 4:18CV00915-RWS, 2018 WL 6304900, at *1 (E.D. Mo. Dec. 3, 2018) (a complaint alleging misrepresentation under the MMPA must satisfy Rule 9(b)).  The Court finds that Rule 9(b)'s heightened pleading requirements apply to each of Tarvin's claims.

Under Rule 9(b), a plaintiff must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)).  In other words, the party must typically identify the "who, what, where, when, and how" of the alleged fraud.  *Id.*  The Court finds that, at minimum, Tarvin has failed to sufficiently plead either the "who" or the "when."  Tarvin does not allege with particularity who made the alleged misrepresentations.  Instead, Tarvin alleges that "Wentworth misrepresented [Mr. Gray] to be disinterested counsel." Tarvin's Complaint defines the name "Wentworth" to collectively

14

identify all five separate corporate defendants.  Doc. 1 at 1; *see also* Doc. 1 at ¶ 32 ("Defendants were the ones to…make the misrepresentations about the status of Mr. Gray as disinterested counsel to the court and that the transaction was in the best interests of Plaintiff").  Accordingly, Tarvin does not plead with sufficient particularity who made the alleged misrepresentations.  *See, e.g., Winsler v. Ameriquest Mortg. Co.*, No. 4:11-CV-1070-DGK, 2012 WL 1854788, at *3 (W.D. Mo. May 21, 2012) (allegation that "the loan modification department" made misrepresentation did not satisfy Rule 9(b)'s pleading requirements).

Nor does Tarvin plead with sufficient particularity *when* the alleged misrepresentations were made.  Tarvin only alleges (1) the approximate date when he first contacted Defendants about selling his annuity ("on or about March 2015 [sic]."[1] Doc. 1 at ¶ 19), and (2) the date when Tarvin and Defendants completed their agreement ("on or about May 5, 2005."  Doc. 1 at ¶ 24).  The Court is left to surmise that the alleged misrepresentations occurred sometime during this three-month period.  This does not meet Rule 9(b)'s requirement of particularity.  *See, e.g., Hill v. Bank of Am., N.A.*, No. 4:16CV00444-ERW, 2016 WL 6441599, at *4 (E.D. Mo. Nov. 1, 2016) ("pleading a single instance of misrepresentation occurred during a two month time period does not satisfy the particularity requirement of [Rule] 9(b)'s 'when' element."); *see also Arthur v. Medtronic, Inc.*, 123 F. Supp. 3d 1145, 1150 (E.D. Mo. 2015) (finding allegations did not satisfy Rule 9(b)'s particularity requirement where plaintiff alleged fraudulent misrepresentation happened "in November 2008").  Thus, Tarvin's claims fail to meet the heightened pleading requirements of Rule 9(b).  Because the Court dismisses each of Tarvin's claims under Rule 12(b)(6) for failure to state a claim, the Court does not reach Defendants' alternative argument that the applicable statute of limitations also bars Tarvin's claims.

---

[1] Tarvin's Complaint alleges that he first contacted Defendants "on or about March 2015."  Doc. 1 at ¶ 19.  Given the subsequent context, it appears this is a typographical error that should read "on or about March 2005."

Accordingly,

**IT IS HEREBY ORDERED** that [10] Defendants' Motion to Dismiss Plaintiff's Class Action Complaint is GRANTED.  A separate Judgment in accordance with this Memorandum and Order is entered this same date.

So Ordered this 29th day of June, 2020.

                                              **STEPHEN R. CLARK**
                                              **UNITED STATES DISTRICT JUDGE**